**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 02 CR 1050-4 |
| | Judge James B. Zagel |
| FRANK CALABRESE, SR., | |
| Defendant, | |
| and | |
| DIANE CIMINO CALABRESE, | |
| Third Party Citation Respondent. | |

**MEMORANDUM OPINION AND ORDER**

The United States of America moves for summary judgment and a turnover order against Diane Cimino Calabrese ("Diane" or "Claimant") and Frank Calabrese, Sr. ("Frank") for $350,000 in proceeds from the sale of 2820 N. 75th Court in Elmwood Park, Illinois (the "Property"), to partially satisfy a judgment order against Frank. For the reasons stated below, the Motion for Summary Judgment is denied.

**I.     BACKGROUND**

In January 2009, Frank was sentenced to a term of life imprisonment for his involvement in illegal activities of the Chicago Outfit. He was later ordered to pay restitution to family members of his victims in a judgment amount of $4,422,572.89. To enforce this judgment, the government served a Third-Party Citation to Discover Assets on Diane in March 2010, and examined her in May 2010 to determine whether Frank held any right or interest to real and

personal property held in her name. Diane was married to Frank from 1986 to 1993, and again from 1995 until at least 2010. Both parties agree that by 2002 Diane held sole title to the Property as the final record transferee in a line of Calabrese family members dating back to 1977. On May 11, 2006 Diane sold the Property for $349,925.66. It is undisputed that Frank was never on the title to the Property and never was a transferor of record.

The government argues that Frank was always the true owner of the Property and that he directed a series of transfers to family members as his "nominees" with the intent to avoid judgment claims against him and to defraud the United States. Alternatively, the government argues that the transfer of the Property to Diane was constructive fraud in that Frank directed the Property to be transferred from Sophie Calabrese, Frank's mother, as his nominee, to Diane for no financial consideration, thereby leaving Frank insolvent and without the value of this asset to satisfy his debts.

Claimant Diane Calabrese asserts that the Property was never owned, possessed, or controlled by Frank. She further claims that the 2002 transfer of the Property to her from Sophie did not constitute fraud because Sophie was a record owner since 1977 and not Frank's nominee. Diane maintains that Sophie's transfer was done with Sophie's input and approval for legitimate purposes of protecting the house from Sophie's children and estate planning. Claimant alleges the government's case is built on unreliable witness statements and unsupported inferences and that the United States has not demonstrated an absence of a genuine issue of material fact and thus is not entitled to judgment as a matter of law.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party can show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

2

Fed.R.Civ.P. 56(a); *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 988 (7th Cir. 2006). Once the moving party has set forth the basis for summary judgment, the non-moving party must then meet the burden of showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e). They must offer specific facts and not merely deny the pleadings or proffer unsupported allegations. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering if factual issues exist, the court construes all facts and reasonable inferences in the light most favorable to the non-moving party. *Sornberger v. City of Knoxville, Ill.,* 434 F.3d 1006, 1012 (7th Cir. 2006). Such facts and inferences will only be accepted, however, if they are backed up by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). The court's review probes "whether the evidence presents a sufficient disagreement to require submission to the jury, or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).[1]

### III. DISCUSSION

The parties are in agreement that the 2009 criminal restitution judgment against Frank Calabrese created a lien against all of his assets. The government, as judgment creditor, is

---

[1] I reject the government's argument that the third-party claimant carries the burden of proof in challenging a writ of execution issued pursuant to the FDCPA. The argument is based on a comparison to questions of standing that often arise in civil forfeiture proceedings. For one thing, the Claimant's "burden" to establish standing in civil forfeiture proceedings is not really a burden of proof at all – it is a pleading requirement. *United States of America v. $196,969.00*, No. 12-3414, slip op. at 4 (7th Cir. June 11, 2013). More to the point, the analogy is inapt in the context of a writ of execution issued against a third party to collect on a judgment debtor's debt. If the asset in question has been discovered due to a third-party citation and examination, presumably the third-party holds at least a possessory or title interest in the property and thus standing would not be an issue. The better parallel to draw with civil forfeiture is that the government very clearly carries the burden of proof to demonstrate that property is subject to forfeiture. 18 U.S.C. § 983(c). Although the FDCPA does not explicitly place the burden of proof on the government, it would be utterly at odds with basic principles of due process to allow the government to collect on a debt by seizing property from non-debtors, and then put the onus on the non-debtor to prove a negative (that the debtor has no interest in the property). Further, the relevant Illinois collection provision very clearly places the burden of proof on the judgment creditor. *See Lawyers Title Ins. Corp. v. Dearborn Title Corp.,* 939 F.Supp. 611 (N.D. Ill. 1996), *affirmed in part, vacated in part,* 118 F.3d 1157, on remand 22 F.Supp.2d 820; *Mid-American Elevator Co., Inc. v. Norcon, Inc.,* 679 N.E.2d 387 (App. 1 Dist. 1996). The burden in this case lies with the government.

3

entitled to enforce collection of this debt under both federal law and Illinois state law as if the debt were a civil judgment or a tax lien. 18 U.S.C. §3613(a)(c). In a discovery examination of the judgment debtor's assets or income, Illinois law also provides for a service of citation to third-party holders of assets or income of the judgment debtor. 735 ILCS 5/2-1402(a). If a third party is found to be holding non-exempt assets or income of the judgment debtor, they can be compelled to deliver them to the judgment creditor to be applied in satisfaction of the debt. 735 ILCS 5/2-1402(c)(3).

To collect the sale proceeds of the Property at issue in this case, the government must show that Frank, and not Diane, held interest in the Property at least at the time of sale. The government proceeds on the theory that the 2002 transfer from Sophie that resulted in Diane obtaining sole title was one in a long line of fraudulent conveyances. The government suggests that the final transfer from Sophie to Diane was either done with the specific intent by Frank to hinder or defraud the United States or, at the very least, Frank directed the transfer from Sophie to Diane for no consideration when he knew or should have known it would render him insolvent as a debtor to the United States. While both parties more or less agree on the legal criteria to classify a conveyance by a debtor as fraudulent as to a creditor, each party comes to different conclusions when applying the criteria to their own set of facts and inferences. However, we need not parse the specific facts of each fraudulent conveyance criteria at the summary judgment phase. Since Frank the debtor was never a transferor of record, the government must first establish that no reasonable jury could conclude that Sophie was not a nominee of Frank.

In terms of direct evidence, the government produces statements from Nick Calabrese (Frank's brother) and Kurt Calabrese (Frank's son) that Frank used Sophie (and others) as a nominee. They also proffer an admission by Frank in a 1997 plea agreement that he had

4

previously titled bank accounts and another piece of property in others' names to shield his ownership. Diane maintains, and the government admits, that Sophie was a titled interest holder in the Property as far back as 1977, predating any indictments of Frank. On the other hand, Diane characterizes Nick and Kurt's statements as cooperation by convicted felons for preferential treatment by the government. She has no real explanation for the 1997 plea admission.

In terms of indirect evidence, the parties are again in agreement that property held by a third party may be levied upon if it is determined that the third party merely holds title as a nominee of the true beneficial owner. *Oxford Capital Corp. v. United States*, 211 F.3d 280, 284 (5th Cir. 2000). To determine the connection between debtor and property, courts have employed many factors for consideration. *Holman v. United States*, 505 F.3d 1060, 1065 (10th Cir. 2007) ("The ultimate inquiry is whether the taxpayer has engaged in a legal fiction by placing legal title to property in the hands of a third party while actually retaining some or all of the benefits of true ownership."); *Spotts v. United States*, 429 F.3d 248, 253 (6th Cir. 2005); *Oxford Capital Corp.*, 211 F.3d at 284. No one factor is dispositive in deciding a nominee inquiry; rather the facts and circumstances of each case should be applied to the factors as a whole.

1. Adequacy of consideration - Looking at the decisive 2002 transfer between Sophie and Diane, Claimant admits in her 56.1(b) response that the transfer was made for $10. Diane offers legitimate reasons for Sophie's transfer, including estate planning, maintaining eligibility for Medicaid, and because Sophie wanted to reward Diane for taking care of her. The government points to case law indicating that intangible benefits do not constitute adequate consideration from

the standpoint of creditors. However, the government's cases involve transfers made directly by the debtor; consideration given for transfers made between alleged nominees is not necessarily relevant without first establishing that the property was controlled by the debtor.

2. <u>Whether the Property was placed in the hands of the nominee in anticipation of a lawsuit or other liability</u> – The government relies heavily on Frank's 1997 plea admission that his *modus operandi* previously included titling bank accounts and one other piece of property in the names of others to shield his ownership. The government further relies on Nick and Kurt's statements to bolster the argument that Frank was always in fear of indictment or judgment based on his ongoing illegal activities and routinely used nominees. Diane points out that it is undisputed that Sophie held a beneficial interest as far back as 1977. Diane offers evidence that James (Frank's father) purchased the Property in 1977 through sale proceeds of another house and maintains Sophie would naturally have had an interest as James's wife. Given the purchase date of the Property, and the fact that 2820 N. 75th Court was not one of the properties that Frank identified in his 1997 plea admission, I think the reliability of Nick and Kurt's statements should be evaluated by a fact finder.

3. <u>Whether there was a close relationship between the taxpayer and the nominee</u> – Diane admits that all the transfers from 1977 to 2006 involved Calabrese family members, but argues that intra-family transfers are not inherently suspicious when the judgment debtor was never a transferor. The government has not put forth conclusive evidence that Sopie's original 1977 interest in the Property was as

Frank's nominee, and thus the relevance of subsequent intra-family transfers is questionable at this point.

4. <u>Whether the conveyances were recorded</u> – The government offers that some of the transfers were not recorded or recorded well after the transactions, specifically the assignment of beneficial interest from James and Nick to Kurt and Sophie allegedly executed in 1990; and the 1996 quit claim deed from Kurt and Sophie to Sophie and Dolores not recorded until 2006. Diane disputes the date of the 1990 beneficial interest transfer and claims the government has shown no legal requirement to record beneficial interest transfers. Further, she maintains that other than the 1996 quit claim, all other transfers were recorded contemporaneously with the transactions. The record bears this out and it very clearly cuts in favor of Diane.

5. <u>Control, possession and continued enjoyment of the Property</u> – The government uses both Nick and Kurt's statements to establish that Frank exercised control over the Property by having them collect rents from tenants and deposit the money into bank accounts titled in others' names but controlled by Frank. The government also tries to demonstrate possession by showing Frank also stored cars on the Property at different times. Diane's evidence mainly consists of her statement that she collected rents at times and deposited the money into Sophie's account. She further attacks the statements of Kurt and Nick as contradictory, unreliable, and incomplete as to the time periods of rental collection and Frank's alleged control. Alternatively, Diane points to the fact that the government does not dispute Diane's contention that Frank assisted his mother in some of her

7

financial affairs after James' death. She asserts that a reasonable explanation for Frank's alleged control of rental receipts was merely a son helping his mother. In addition, Diane does not admit or deny that Frank stored cars at the Property, but disputes that this fact would be dispositive of possession since Frank never lived at the Property and may have just received permission to store cars from other family members who owned the Property. She also offers evidence that during a period of Nick's interest in the Property, he allowed his ex-wife to live there, demonstrating his control over the Property. Again, the government's evidence hinges on the credibility of Nick and Kurt's statement, which is best left to a fact finder to determine.

The government is correct in stating that Diane cannot simply deny the pleadings or offer unsupported inferences to defeat summary judgment. And if the only questions of fact revolved around the believability of Nick and Kurt's statements, the balance for summary judgment would probably tip toward the government. *Dugan v. Smerwick Sewerage Co.*, 142 F.3d 398, 406 (7th Cir. 1998) ("[T]he prospect of challenging a witness' credibility is not alone enough to avoid summary judgment."). But Diane also offers direct evidence in the way of title records attesting to Sophie's interest in the Property before any indictments; James' recorded purchase of 2820 N. 75th Court after the sale of a previous residence undisputed as his own; and real estate taxes and tax deduction records for James during his ownership period. This evidence could give rise to reasonable alternative inferences in the minds of jurors asked to weigh the government's nominee theory.

### IV.  CONCLUSION

For the foregoing reasons, the government's Motion for Summary Judgment is denied.

ENTER:

James B. Zagel
United States District Judge

DATE: August 27, 2013